## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREN GREEN and M.G., a minor,

        Plaintiffs,

    v.

MOUNT CARMEL AREA
SCHOOL DISTRICT, *et al.*,

        Defendants.

No. 4:18-CV-02218

(Judge Brann)

## MEMORANDUM OPINION

### APRIL 24, 2019

Defendants Mount Carmel Area School District, Superintendent Bernard Stellar, Principal Lisa Varano, Chemistry Teacher Tammy Michaels, and School Nurse Leanne Ryan have moved to dismiss the amended complaint filed by plaintiffs Karen Green and M.G., a minor (hereinafter, "M.G."). For the following reasons, Defendants' motion will be granted in part.

## I.    BACKGROUND[1]

M.G. is a student at Mount Carmel Area High School. During one of her chemistry classes, Chemistry Teacher Michaels demonstrated a chemical reaction involving the ignition of methanol. M.G. was sitting in the first row of students. Ms. Michaels poured some methanol into a container and attempted to light it on

---

[1]    This Court derives relevant factual background from M.G.'s amended complaint, *see* ECF No. 12.

fire.  Unsatisfied with the result, Ms. Michaels added more methanol into the container, and again attempted to ignite the mixture with a match.  The mixture exploded, and the explosion toppled the container and caused flaming liquid methanol to spill onto M.G.'s leg and desk.

As Chemistry Teacher Michaels and fellow students tried to extinguish the fire, they realized that the classroom's fire blanket had never been removed from its shipping container.  The classroom's chemical shower was also non-operational.

M.G. was transported by wheelchair to the school nurse's office.  While there, M.G. avers that School Nurse Ryan provided her with no medical care because she was not a burn specialist.

M.G. was transported to the Lehigh Valley Hospital Burn Unit where she was treated for second degree burns.  She was also referred to counseling for psychological and emotional trauma.

M.G.'s six-count amended complaint alleges four constitutional claims under 42 U.S.C. § 1983 and two tort claims under Pennsylvania law.  Specifically, she alleges substantive due process claims against all Defendants (Count I), supervisory liability claims against Superintendent Stellar and Principal Varano (Count II), a *Monell* claim against the Mount Carmel Area School District (Count III), state-created danger claims against all Defendants (Count IV), negligence

claims against all Defendants (Count V), and intentional infliction of emotional distress claims against all Defendants (Count VI).[2]

Currently pending before the Court is Defendants' motion to dismiss M.G.'s amended complaint for failure to state a claim upon which relief can be granted.[3]

## II.    DISCUSSION

### A.    Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief may be granted,[4] a court assumes the truth of all factual allegations in the plaintiff's complaint and draws all inferences in favor of that party;[5] the court does not, however, assume the truth of any of the complaint's legal conclusions.[6]  If a complaint's factual allegations, so treated, state a claim that is plausible—*i.e.*, if they allow the court to infer the defendant's liability—the motion is denied; if they fail to do so, the motion is granted.[7]

---

[2]   Amended Complaint (ECF No. 12).  Defendants have also moved to dismiss M.G.'s original complaint, *see* ECF No. 8.  After this motion was filed, M.G. amended her complaint as a matter of course per Federal Rule of Civil Procedure 15, *see* ECF No. 12.  Accordingly, Defendants' first motion to dismiss will be denied as moot.

[3]   Motion to Dismiss (ECF No. 13).

[4]   Federal Rule of Civil Procedure 12(b)(6).

[5]   *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[6]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7]   *Id.  See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).

### B. M.G.'s § 1983 Claims (Counts I, II, III, and IV) Are Dismissed Without Prejudice and With Leave to Amend

Constitutional injury does not arise "whenever someone cloaked with state authority causes harm."[8]  Rather, constitutional injury arises when a state actor's deprivation of a right "shocks the conscience."[9]  What amounts to conscious-shocking behavior depends on the circumstances of each case.[10]  In instances such as here, where a state actor has time to make an "unhurried judgment[]," M.G. may

---

[8]  *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).

[9]  *Chainey v. Street,* 523 F.3d 200, 219 (3d Cir. 2008).

[10]  *See Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (identifying three levels of culpability and explaining that where a state actor "has time to make an "unhurried judgment[ ]," a plaintiff need only allege facts supporting an inference that the official acted with a mental state of "deliberate indifference").

meet the shocks-the-conscious standard and successfully state her § 1983 claims[11] by alleging facts suggesting that Defendants acted with "deliberate indifference."[12]

The United States Court of Appeals for the Third Circuit, acknowledging that the phrase deliberate indifference "has an elusive quality to it,"[13] has described it as a "conscious disregard of a substantial risk of serious harm,"[14] or a "willful disregard" demonstrated by actions that "evince a willingness to ignore a foreseeable danger or risk."[15] Deliberate indifference falls "somewhere between intent, which 'includes proceeding with knowledge that the harm is substantially certain to occur' and negligence, which involves 'the mere unreasonable risk of

---

[11] To allege a substantive due process claim, as M.G. attempts to do in Count I, she must allege that "the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey,* 523 F.3d at 219. To allege a substantive due process claim premised on supervisory liability, as M.G. attempts to do in Count II, M.G. must plead, *inter alia,* that policymaker defendants "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.*M. ex rel. J.M.K. v. Luzerne County Juv. Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). To hold Mount Carmel Area School District liable, as she attempts to do in Count III, she must successfully allege a constitutional violation. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n. 15 (3d Cir.2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."); *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (holding that "in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights"). To allege a state-created danger claim, as M.G. attempts to do in Count IV, she must plead *inter alia* that "a state actor acted with a degree of culpability that shocks the conscience." *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (setting forth elements to allege a state-created danger claim); *Sanford*, 456 F.3d at 309 (explaining "that in any state-created danger case [regardless of the applicable culpability level], the state actor's behavior must always shock the conscience").

[12] *Kedra*, 876 F.3d at 437.

[13] *Id.* (quoting *Sanford*, 456 F.3d at 301)).

[14] *Id*. (quoting *Vargas v. City of Philadelphia*, 783 F.3d 962, 973-74 (3d Cir. 2015)).

[15] *Id*. (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997)).

harm to another.'"[16]   Deliberate indifference can be demonstrated subjectively or objectively.[17]

Turning to M.G.'s amended complaint with this legal backdrop in mind, I conclude that M.G. has failed to allege facts suggesting that she suffered an injury of constitutional magnitude, and accordingly, her § 1983 claims must be dismissed.

### i.   M.G. has not alleged subjective deliberate indifference.

To plead subjective deliberate indifference, M.G. must allege facts giving rise to the inference that each defendant acted with either actual awareness or a conscious disregard of a substantial risk of serious harm.[18]

Here, M.G.'s amended complaint attempts to allege constitutional injury using legal conclusions—not facts.  M.G. argues that by alleging that Defendants were "actually aware" of guidance from the National Science Teachers Association, the American Chemical Society, the U.S. Chemical Safety Investigation Board, and the National Fire Protection Association, she has alleged that they acted with subjective deliberate indifference.[19]  But these allegations, as

---

[16]   *Id.* (quoting *Morse*, 132 F.3d at 910 n.10).

[17]   *Id.* at 438-39; *Estate of Smith v. Marasco,* 430 F.3d 140, 151 (3d Cir. 2005) (explaining that to prevail on a § 1983 claim against multiple defendants, plaintiff must show that each individual defendant violated plaintiff's constitutional rights).

[18]   *Kedra*, 876 F.3d at 441; *Connelly v. Lane Constr. Corp,*., 809 F.3d 780, 787 (3d Cir. 2016) (explain that to test the sufficiency of a complaint the court must "take note of the elements a plaintiff must plead to state a claim").

[19]   Brief in Opposition (ECF No. 20) at 11-12; Amended Complaint (ECF No. 12) at ¶ 24.

well as other general averments made throughout her complaint,[20] appear to be more legal conclusions rather than factual allegations, and consequently, do not enjoy the presumption of truth.[21] Courts evaluating similar conclusory statements have reasoned that they are "nothing more than a hollow attempt to couch illusory legal conclusions as facts."[22]

Additionally, M.G.'s amended complaint does not allege facts giving rise to an inference of actual awareness as to each individual defendant.[23] When a plaintiff brings a § 1983 claim against a defendant in his or her individual capacity, the plaintiff must establish that the defendant had "personal involvement in the

---

[20] Throughout her complaint, M.G. alleges that generally that Defendants were aware of the risk of harm by concluding they had "knowledge of and acquiesced to" Chemistry Teacher Michaels' experiment, had "contemporaneous knowledge" thereof, or were "actually aware" of warnings issued by various safety societies. *See* Amended Complaint (ECF No. 12) at ¶ 13, 47, 49, 50, 60, 78.

[21] *See Connelly*, 809 F.3d at 787 (explaining that when testing sufficiency of a complaint, the district court must identify allegations that are merely legal conclusions "because they ... are not entitled to the assumption of truth").

[22] *See Snatchko v. Peters Twp.*, No. 2:12-cv-1179, 2012 WL 6761369, at *12 (W.D. Pa. Dec. 28, 2012) (concluding that the plaintiff's efforts to aver that the township "encouraged and tolerated the alleged practices" and "had direct knowledge that [the officer] engaged in illegal procedures" were nothing more than "a hollow attempt to couch illusory legal conclusions as facts to support some viable supervisory claim"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680-81 (2009) (disregarding allegations that "petitioners knew of, condoned, and willfully and maliciously agreed to subject [respondent] to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin" and that defendant "was the principal architect of this invidious policy, and that [individual] was instrumental in adopting and executing it" and calling those allegations "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim").

[23] *See Marasco,* 430 F.3d at 151 (explaining that to prevail on a § 1983 claim against multiple defendants, plaintiff must show that each individual defendant violated plaintiff's constitutional rights).

alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."[24]  Here, M.G.'s amended complaint states that Superintendent Stellar, Principal Varano, Chemistry Teacher Michaels, and Nurse Ryan are each sued in their "individual and official capacities," but M.G. does not explain with particularity how each defendant violated her constitutional rights.[25]

To the extent M.G. seeks to sustain only her substantive due process claim against Chemistry Teacher Michaels,[26] allegations in M.G.'s amended complaint do not plausibly give rise to an inference that Ms. Michaels acted with actual awareness or a conscious disregard of a substantial risk of serious harm.[27]

Courts have found probative of deliberate indifference facts suggesting that the risk was obvious or a matter of common sense.[28]  Here, M.G. argues that the risk of igniting methanol creates an obvious risk of explosion that could cause burn injuries to those in the immediate vicinity.[29]  She cites no case law to support her

---

[24]  *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988).

[25]  Amended Complaint (ECF No. 12) at ¶ 5, 6, 7, 8.

[26]  In her brief opposing Defendants' motion to dismiss, M.G. seems to only defend the sufficiency of Count I of her complaint against Chemistry Teacher Michaels.  *See* Brief in Opposition (ECF No. 20) at 10-16.

[27]  *Connelly*, 809 F.3d at 787 (explaining that when testing sufficiency of a complaint, the district court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief").

[28]  *Kedra v. Schroeter*, 876 F.3d 424, 441 (3d Cir. 2017); *see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (explaining that the fact that the risk of harm is obvious" is relevant, among other pieces of evidence, to "infer the existence of this subjective state of mind").

[29]  Brief in Opposition (ECF No. 20) at 12-13.

description of this risk as obvious, and only by analogy looks to the Third Circuit's decision *Kedra v. Schroeter* for support.

But *Kedra*'s facts are a far cry from what this Court confronts here. In *Kedra*, the defendant, a trained firearms instructor, pointed what he believed to be an unloaded weapon at the victim and pulled the trigger—firing a bullet that killed the victim.[30] The Third Circuit concluded that "[t]he risk of lethal harm when a firearms instructor skips over each of several safety checks designed to ascertain if the gun is unloaded, points the gun at a trainee's chest, and pulls the trigger is glaringly obvious, and this obviousness supports the inference that the instructor had actual knowledge of the risk of serious harm."[31] Here, to the extent the amended complaint posits that Chemistry Teacher Michaels skipped over safety checks designed to ensure the safety of the methanol experiment, such as by failing to ensure that the fire blanket and chemical shower were accessible and operational, the amended complaint alleges no facts suggesting or supporting the inference that Ms. Michaels knew her students would be in harm's way when she conducted the experiment. In other words, unlike the defendant in *Kendra* who skipped several safety checks *and* pointed a gun at the victim's chest, Chemistry Teacher Michaels performed the experiment on her desk with students seated

---

[30]  *Kedra*, 876 F.3d at 424-30.

[31]  *Id.* at 442.

several feet away, and there are no facts suggesting that she directed the explosion toward M.G. or any other student.

Courts have also found probative of deliberate indifference facts suggesting that the defendant was advised of the risk of harm and proceeded anyway.[32] This inquiry contemplates a danger that is foreseeable.[33] Two decisions from the United States District Court for the Eastern District of Pennsylvania—*Sciotto v. Marple Newtown School District* and *B.D. v. Downingtown Area School District*—are instructive.

In *Sciotto v. Marple Newtown School District*, a high school wrestling coach invited alumni to return to school and wrestle current high school wrestlers.[34] In one matchup between an alumni wrestler who weighed 170 pounds and the plaintiff who weighed 110 pounds, the alumni wrestler threw the plaintiff on the ground with such force that the plaintiff suffered a cervical spine injury and was rendered a quadriplegic.[35] The plaintiff alleged various § 1983 claims against the school district, the athletic director, the wrestling coach, and the alumni wrestler.[36]

---

[32] *See id.* at 441 (considering "evidence that the actor was expressly advised of the risk of harm and the procedures designed to prevent that harm and proceeded to violate those procedures" probative of deliberate indifference).

[33] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997).

[34] *Sciotto ex rel. Sciotto v. Marple Newtown School Dist.*, No. 98–2768, 1999 WL 79136, at *1 (E.D.Pa. Feb. 9, 1999).

[35] *Id.*

[36] *Id.* at *2.

When the defendants moved to dismiss the plaintiff's claims, the district court found that the plaintiff had sufficiently alleged deliberate indifference in part because, prior to the incident, "the school defendants were warned against the use of adult wrestlers at the high school practices, but . . . continued inviting the adult wrestlers to participate despite complaints about this practice or custom."[37] The district court concluded "that based on the warnings and complaints that the school defendants received, they knowingly proceeded with this foreseeable danger or risk."[38]

Analogous circumstances occurred in *B.D. v. Downingtown Area School District*. There, a high school track coach held an indoor practice in the school's hallways by creating running courses for sprinters and middle-distance runners whose paths would intersect.[39] As the runners ran the various courses, the coach became aware of "small collisions and/or near misses" where the courses intersected or contained blind turns.[40] While running one of the courses, the plaintiff collided with another runner and hit his head on the concrete floor, suffering a depressed skull fracture and brain contusions.[41] The plaintiff alleged

---

[37] *Id.* at *3.

[38] *Id.* at *3.

[39] *B.D. v. Downingtown Area School District*, No. 15-6375, 2016 WL 3405460, at *1 (E.D.Pa. June 21, 2016).

[40] *Id.*

[41] *Id.* at *1.

various § 1983 claims against the school district and the track coaches.[42]  When the defendants moved to dismiss the plaintiff's claims, the district court concluded that the defendants' "alleged failure to modify the courses after these minor collisions or near misses" supported the inference that they had actual knowledge of the serious risk of harm, and accordingly, the court concluded that the plaintiff had adequately plead deliberate indifference.[43]

M.G. argues that under *Sciotto* and *B.D.,* a prior injury need not occur for the defendant to be aware of the risk of harm.[44]  But the plaintiffs in *Sciotto* and *B.D.* nevertheless alleged facts suggesting that defendants were aware of the *risk* of injury.  That is, the plaintiff in *Sciotto* alleged that the wrestling coach received prior warnings and complaints regarding his policy of allowing alumni wrestlers to wrestle current students, and the plaintiff in *B.D.* alleged that the track coach had previously observed students nearly collide with one another.  Both allegations suggest that the prior warnings, complaints, and "near misses" rendered defendants at least aware of the risk of injury, even if no prior injuries had occurred.

Here, M.G. alleges no facts suggesting that Chemistry Teacher Michaels, in conducting the methanol ignition experiment, was either previously warned of the risk of injury or that in previous iterations she experienced "near misses."  There

---

[42]  *Id.* at *2.

[43]  *Id.* at *4.

[44]  Brief in Opposition (ECF No. 20) at 13 n.5.

are no facts, for example, suggesting that prior methanol experiments either burned or nearly burned one of her students and that she continued to conduct those experiments despite those incidents.[45] The amended complaint seems to suggest the contrary: that Chemistry Teacher Michaels was not aware of such risks because she performed the experiment for 23 years without incident.[46] To the extent M.G. argues that Chemistry Teacher Michaels's personal use of protective goggles gives rise to an inference that she was aware of the risk of injury, her use of protective goggles suggests she was aware of the risk of injury to herself; that fact alone does not suggest that she was aware of the risk of injury to her students.

---

[45] *Compare Hall v. Martin*, No. 17-523, 2017 WL 3298316 (W.D. Pa. 2017) (determining that because the defendant was aware of "numerous occasions where students were injured after being hit by a floor hockey puck in [the gym teacher's] class," but the defendant continued to instruct students to play floor hockey, the risk that a student playing goalie without any facial protective equipment of being hit in the eye with a hockey puck was foreseeable) and *Sciotto*, 1999 WL 79136, at *2-3 (concluding defendants were on notice of a foreseeable risk of injury after receiving warnings about player safety and permitting state-created danger claim to survive motion to dismiss), *with Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F.Supp.3d 220, 234-36, 238-39 (W.D. Pa. 2015) (concluding that in state-created danger claim was deficient because there were no allegations that any injuries occurred in prior drills to put the coaches "on some plausible notice of the concrete risk of a sufficiently serious injury"); *Lesher v. Zimmerman*, No. 5:17-cv-04731, 2019 WL 1110114, at *4 (E.D.Pa. Mar. 11, 2019) (concluding that complaint failed to plead deliberate indifference in part because plaintiff, who was injured by defendant coach during softball batting practice, does not allege that the defendant "previously injured a student while batting at softball practice, nor does she allege any prior incidents with similar circumstances that show [the defendant] 'consciously disregarded a substantial risk of serious harm'"); *cf. Patrick v. Great Valley School Dist.*, 296 Fed. Appx. 258, 261-62 (3d Cir. 2008) (concluding that in state-created danger claim, evidence that coach had engaged in misconduct on more than one occasion provides circumstantial evidence of deliberate indifference).

[46] Amended Complaint (ECF No. 12) at ¶ 25; *see also* Brief in Opposition (ECF No. 20) (categorizing some of M.G.'s claims as "single-incident").

Finally, courts have found probative of deliberate indifference facts suggesting that a defendant had particular professional training or expertise that would have placed the defendant on notice of the risk of harm.[47] In *Kedra*, where the defendant—who had specialized training and expertise in firearms safety— nevertheless pointed what he believed was an unloaded weapon at the victim and pulled the trigger, the Third Circuit concluded that the obvious risk of harm involved with pointing a gun at another combined with the defendant's "specialized training and expertise in firearms safety is easily sufficient to give rise to an inference of actual knowledge of risk."[48]

In this matter, Chemistry Teacher Michaels' classroom experience could be relevant to her knowledge of the risk involved in conducting various chemistry experiments, including the risks involved with igniting methanol.[49] But the complaint does not allege that her classroom experience placed her on notice of the risk. Rather, the amended complaint alleges that at the time of the incident, Chemistry Teacher Michaels performed the experiment "[j]ust as she had done for the prior 23 years."[50] In other words, the risk that a student would be burned by

---

[47] *See Kedra v. Schroeter*, 876 F.3d 424, 441 (3d Cir. 2017) (considering "evidence that the actor had particular professional training or expertise" probative of deliberate indifference).

[48] *Id.* at 442.

[49] *Id.*; *see also L.R. v. School District of Philadelphia*, 836 F.3d 235, 245 (3d Cir. 2016) (explaining that classroom experience could be relevant to an instructor's knowledge of certain risks).

[50] Amended Complaint (ECF No. 12) at ¶ 7.

this particular experiment was not so obvious that a teacher with Ms. Michaels' experience and knowledge would have realized that risk after performing it repeatedly, and, ostensibly, without prior incident.[51]

In sum, M.G. has failed to plead subjective deliberate indifference because she has not alleged facts giving rise to the inference that defendants acted with actual awareness or a conscious disregard of a substantial risk of serious harm.[52]

### ii. *M.G. has not alleged objective deliberate indifference.*

A plaintiff may plead deliberate indifference by showing that "a substantial risk of serious harm [was] so obvious that it should have been known."[53] For the reasons discussed above—particularly the substantial differences between what M.G. alleges and where the Third Circuit found constitutional obviousness in *Kedra*—M.G. has not alleged facts giving rise to the inference that the risk of serious harm was obvious.[54]

---

[51] *See also MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 217 (3d Cir. 2005) (observing that, even where a risk is "so obvious," an individual's prior "experience and knowledge" makes it more likely that he will "realize[ ]" that risk).

[52] *Kedra*, 876 F.3d at 441.

[53] *See Kedra*, 876 F.3d at 439 (concluding risk of harm is obvious when "a firearms instructor skips over each of several safety checks designed to ascertain if the gun is unloaded, points the gun at a trainee's chest, and pulls the trigger"); *L.R.*, 836 F.3d at 246 (concluding that risk of harm is obvious when a kindergarten teacher releases a five-year-old student to an "unidentified, unverified adult" after asking the adult for identification).

[54] I note that even though the *Kedra* court appeared to accept an objective deliberate indifference standard, the Third Circuit did not seem to embrace the proposition that obviousness of a risk of injury alone could create constitutional harm, especially when alleging a state created danger claim:

### iii. *Torts caused by state actors do not automatically amount to constitutional injuries.*

The Supreme Court has stated that the "constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."[55] Accordingly, the high court has avoided transforming torts compensable under state tort law into harms of constitutional magnitude simply because injuries were caused by state actors.[56] Indeed, injuries need be conscious-shocking to invoke constitutional protection, and where courts have

---

Contrary to our concurring colleague's concerns about what our holding in this case portends for state-created danger cases or the element of deliberate indifference going forward, we do not today "reduc[e] the standard of deliberate indifference" anywhere "close to negligence." Instead, we require of Appellant's complaint what we have historically required for liability under the state-created danger doctrine: allegations of conscience-shocking, affirmative behavior from a state official that caused "foreseeable and fairly direct" harm to a person who was a foreseeable victim of that behavior.

*Kedra*, 876 F.3d at 448 n.18.

[55] *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).

[56] *See id.* (holding that "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm"); *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 202 (1989) ("[T]he Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation."); *Paul v. Davis,* 424 U.S. 693, 701 (1976) (explaining that the Fourteenth Amendment is not a "font of tort law"); *see also, e.g.*, *Nix v. Franklin County Sch. Dist.*, 311 F.3d 1373, 1376 (11th Cir. 2002) ("Today's holding also comports with the Supreme Court's mandate to remain vigilant in policing the boundaries separating tort law from constitutional law. Substantive due process is a doctrine that has been kept under tight reins, reserved for extraordinary circumstances. The [plaintiffs'] claims do not present such circumstances and are properly confined to the realm of torts."); *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence.").

found conscious-shocking behavior that amounts to a constitutional violation differs substantially from what appears to be a claim for mere negligence here.[57]

For example, in a school classroom setting, when a complaint alleges that a teacher punched a student in the chest[58] or struck a student in the legs and arms causing bruising,[59] courts have found the type of conscious-shocking behavior sufficient to survive a motion to dismiss. By contrast, where high school teachers have conducted experiments leading to accidental death, such when a teacher conducted an electromechanical experiment that caused a student to be electrocuted,[60] or a physics teacher conducted a pool-based physics experiment that caused a student's accidental drowning,[61] courts have concluded that those circumstances lie outside of the Constitution's protections.

Against this backdrop, I am wary that by permitting M.G.'s § 1983 claims to proceed I would be widening the umbrella under which a state tort sounding in negligence could find harbor under the Fourteenth Amendment—in direct

---

[57] *Kedra*, 876 F.3d at 448 n.18 (explaining that the deliberate indifference standard is not "anywhere 'close to negligence'"); *Sanford v. Stiles*, 456 F.3d 298, 311 (3d Cir. 2006) ("[m]ere negligence is not enough to shock the conscience"); *cf. Dacosta v. Nwachukwa,* 304 F.3d 1045, 1048 (11th Cir. 2002) (explaining that even conduct by a government actor that would amount to an intentional tort under state law will rise to the level of a substantive due process violation only if it also "shocks the conscience").

[58] *Kurilla v. Callahan,* 68 F.Supp.2d 556, 564 (M.D.Pa. 1999).

[59] *Vicky M. v. Northeastern Educational Intermediate Unit 19*, 486 F.Supp.2d 437, 447, 456 (M.D.Pa. 2007).

[60] *Nix*, 311 F.3d at 1376.

[61] *Estate of C.A. v. Castro,* 547 Fed.Appx. 621 (5th Cir. 2013).

contravention of precedent bequeathed to this Court by both the Supreme Court

and our Circuit.[62]

> iv. *Although M.G.'s § 1983 claims must be dismissed, she will be granted leave to file a second amended complaint.*

Because M.G. has failed to allege an injury of constitutional magnitude, her

substantive due process claims against all Defendants (Count I), her supervisory

liability claims against Superintendent Stellar and Principal Varano (Count II), her

*Monnell* claim against Mount Carmel Area School District (Count III), her state-

---

[62] *See Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process") (citation omitted); *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992) (explaining that the Supreme Court has "previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law"); *Baker v. McCollan,* 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles."); *Blain v. Township of Radnor,* 167 Fed.Appx. 330, 333 (3d Cir. 2006) (explaining that the shock the conscious standard's "stringency reflects maintenance of the proper proportions of constitutional, as opposed to ordinary tort violations"); *Kaucher v. County of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006) ("At one end of the spectrum of culpable conduct, negligent behavior can never rise to the level of conscience shocking.); *United Artists Theatre Circuit, Inc. v. Township of Warrington, PA,* 316 F.3d 392, 399 (3d Cir. 2003) ("The 'shocks the conscience' standard encompasses 'only the most egregious official conduct.'") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)); *Berg v. Cnty. of Allegheny,* 219 F.3d 261, 268 (3d Cir. 2000) ("Section 1983 ... does not provide redress for common law torts—the plaintiff must allege a violation of a federal right."); *see also M.U. v. Downingtown High School East*, 103 F. Supp. 3d 612, 626 (E.D.Pa. 2015) ("While [defendant's] conduct may constitute negligence, the Supreme Court has warned that § 1983 is not a vehicle to incorporate state tort law into the constitution. The Court will heed that warning here.").

created danger claims against all Defendants (Count IV),[63] and her desire to obtain punitive damages in connection with these federal claims must all be dismissed.

This Court's dismissal of these claims, however, is without prejudice. Although I question whether M.G. will be able to successfully allege any plausible § 1983 claims, particularly because her claims sound in negligence, I will nevertheless follow the pattern adopted by other courts and grant M.G. leave to file a second amended complaint to state her constitutional claims against all Defendants.[64] M.G. is cautioned that if she cannot allege sufficient facts to state her constitutional claims against each defendant, she should refrain from filing a second amended complaint. Again, her second amended complaint must allege facts sufficient to "raise a right to relief above the speculative level" such that her claim is "plausible on its face."[65] The Court will disregard "naked assertions

---

[63] M.G. contends that that although the state created danger doctrine is "typically pleaded in cases where non-state actors cause the ultimate harm, the doctrine is not so specifically confined." Brief in Opposition (ECF No. 20) at 16 n. 7. She cites to no case law to support that statement, leaving this Court further wondering whether a state created danger claim is available to her at all. *cf. Pope v. Trotwood-Madison City School Dist. Bd. of Educ.*, 162 F.Supp.2d 803, 811 (A.D. Ohio 2000) (explaining that "the state-created danger theory does not apply when harm is inflicted by a defendant state actor rather than by a third party").

[64] *Phillips v. County Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (leave to amend must be granted *sua sponte* in civil rights actions, "unless such an amendment would be inequitable or futile"); *R.B. v. Enterline*, No. 4:16-CV-01583, 2017 WL 2536110, at *11 (M.D. Pa. June 12, 2017) (permitting amendment even though it may be futile); *Yatsko v. Berezwick,* No. 3:06–CV–2480, 2008 WL 2444503, at *6 (M.D.Pa. June 13, 2008) (granting plaintiff leave to amend after finding that complaint alleged negligence, not constitutional injury).

[65] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[66]

## C. The Court Declines to Exercise Jurisdiction over M.G.'s Remaining State Law Claims.

A district court has discretion whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction.[67]  Given that M.G.'s remaining claims arise exclusively under Pennsylvania tort law and there appears to be no affirmative justification to retain jurisdiction here, the Court will decline to exercise supplemental jurisdiction over M.G.'s state law claims.[68] Accordingly, Counts V and VI are dismissed without prejudice to M.G. to either

---

[66]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680-81 (2009).  For instance, M.G.'s attempt to state a state created danger claim against each defendant exemplifies deficient pleading because while successfully alleging a state created danger claim requires pleading facts supporting four discrete elements, *see Bright*, 443 F.3d at 281, M.G.'s complaint seems to simply restate some of these elements as legal conclusions rather than allege facts to support them *see, e.g.*, Amended Complaint (ECF No. 12) at ¶ 68 ("Defendants' affirmative conduct also rendered Plaintiff more vulnerable to danger than had Defendants not acted at all.").  Again, this Court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir. 2007) (explaining that court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation").

[67]  *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640-41 (2009) (citing 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction") (citations omitted)).

[68]  *See Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995) (explaining that when claims over which the district court had original jurisdiction are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so"); *accord Edelstein v. Wilentz,* 812 F.2d 128, 134 (3d Cir. 1987) (holding that a "refusal to exercise pendent jurisdiction over a state law claim after dismissal of all federal claims prior to trial is ordinarily not an abuse of discretion").

assert those claims in a state court of competent jurisdiction, or to reassert those claims in this Court should she choose to file a second amended complaint that attempts to adequately plead her constitutional claims.

## III.    CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss will be granted in part.  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge